UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/16/19
```

METROPOLITAN TRANSPORTATION
AUTHORITY, THE NEW YORK CITY
TRANSIT AUTHORITY, AND EL SOL
CONTRACTING & CONSTRUCTION
CORP.,

          Plaintiffs,

v.

JAMES RIVER INSURANCE COMPANY,

          Defendant.

19-cv-3266 (RA)

MEMORANDUM OPINION
AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiffs Metropolitan Transportation Authority (the "MTA"), the New York City Transit Authority (the "NYCTA"), and El Sol Contracting & Construction Corporation ("El Sol") bring this action against Defendant James River Insurance Company ("James River"), alleging that it improperly denied Plaintiffs insurance coverage in an underlying state proceeding. Defendant now moves to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendant's motion is granted.

## BACKGROUND

**I.  Factual History**

The following facts are drawn from Plaintiffs' complaint and the documents referenced therein. *See, e.g., Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks omitted).

Plaintiffs MTA and NYCTA are public benefit corporations, and Plaintiff El Sol a corporation, all of which are organized pursuant to and conduct business under New York law. *See* Compl. ¶ 1, 2. Defendant James River is an insurance company organized pursuant to the laws of Virginia, with its principal place of business therein. *See* Notice of Removal ¶ 8; Dkt. 1-2.

In 2017, James River issued an insurance policy (the "Policy") to Nuco Painting Corporation ("Nuco" or "the Company"), which included a general liability insurance provision. *See* Compl. ¶ 10-11; Policy, Dkt. 7-3, at 4, 9. Based on the terms of the Policy, James River agreed to defend and indemnify Nuco for, among other things, injuries that its employees suffered during the course of their work for the Company. *See* Policy at 9; *id.* ("We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."). According to the Policy, additional insureds would be covered "[a]s per the written contract." *Id.*, Dkt. 7-4, at 33. The Policy also stated that commercial general liability will "not apply to any liability arising out of … operations … where a Consolidated Insurance Program (CIP), in which you participate, commonly referred to as an Owner Controlled Insurance Program (OCIP) … has been provided by the contractor, project manager, or owner of the construction project." *Id.*, Dkt. 7-5, at 18.

Nuco was subsequently hired as a subcontractor on a construction project owned by MTA (the "construction project" or "project"), *see* Compl. ¶ 11, *see* Def.'s Letter of Explanation ("Def.'s Letter"), 13-4, at 3. El Sol served as the prime contractor on the project. *See* Def.'s Letter at 3. Prior to the start of the construction project, Plaintiffs entered into a Subcontract Agreement (the "Subcontract") with Nuco, in which they were listed "as additional insured[s]" on the project. Subcontract § 9.1(d). Dkt. 13-4. Under the terms of the Subcontract, the

2

construction project was "covered by owner-provided insurance under MTA's OCIP (Owner Controlled Insurance Program)." *Id.* § 9.1. This included, "for on-site activities: Worker's Compensation Insurance, General Liability Insurance, Excess Liability Insurance, Builder's Risk/Installation Floater Insurance, and Railroad Protective Liability Insurance." *Id.* § 9.1(a). The Subcontract also stated that the following insurance would not be covered under MTA's OCIP: "off-site Worker's Compensation Insurance, off-site General Liability Insurance, Business Automobile Liability Insurance, other insurances may also apply – refer to the OCIP Manual in the Contract Terms and Conditions." *Id.* § 9.1(c).

On or about May 9, 2017, Lance Myck, a Nuco employee, was injured while working on the project. *See* Compl. ¶ 8. Subsequently, Myck brought a personal injury suit against Plaintiffs in New York State Court. *See id.* ¶ 9; Myck Compl., Dkt 7-6 at 5 (stating that Myck "was lawfully upon the aforesaid premises as an employee of the aforesaid Nuco Painting Corp., [when] he was caused to sustain serious and severe injuries"). In response, Plaintiffs sought coverage under the Policy, asserting that they qualified as "additional insureds." *See* Compl. ¶ 14. On December 18, 2018, James River denied Plaintiffs' request, *see* Compl. ¶ 15, explaining that, because "[t]he subcontract contemplates that coverage for on-site accidents would be covered by MTA's OCIP," there was no obligation to provide such coverage to Plaintiffs based on Myck's on-site injuries, Pl.'s Letter, Dkt. 13-4, at 7.

**II.     Procedural History**

On February 13, 2019, Plaintiffs brought suit against Defendant for breach of contract, and for a declaratory judgment that they are "additional insureds" under the Policy. *See* Compl. at 5-7. By way of relief, Plaintiffs seek compensatory damages, consequential damages, and attorney's fees. *See id.* at 7-9.

On April 11, 2019, Defendant removed this case to this Court on the grounds of diversity jurisdiction. *See* Dkt. 1. On April 17, 2019, Defendant moved to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. *See* Dkt. 6. Plaintiffs filed their opposition via declaration on April 29, 2019, *see* Dkt. 13, and Defendant replied on May 6, 2019, *See* Dkt. 14.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Although a Court must accept a complaint's allegations as true, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *E.g.*, *Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559 (LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

## ANALYSIS

### I. Plaintiffs' Breach of Contract Claim

Plaintiffs first contend that James River violated the Policy by refusing to cover Plaintiffs as additional insureds pursuant to the Subcontract. The Court disagrees. Although Plaintiffs qualify as additional insureds pursuant to the Subcontract, the contractual language does not cover them for Myck's on-site injury.

"When determining whether a third party is an additional insured under an insurance

policy, a court must ascertain the intention of the parties to the policy, as determined from within the four corners of the policy itself." *Superior Ice Rink, Inc. v. Nescon Contr. Corp.*, 52 A.D.3d 688, 691 (N.Y. App. 2d Dep't 2008).* "A provision in an [insurance] contract cannot be interpreted as requiring the procurement of additional insured coverage unless such a requirement is expressly and specifically stated." *Empire Ins. Co. v. Ins. Corp. of N.Y.*, 40 A.D.3d 686, 688 (N.Y. App. 2d Dep't 2007) (internal quotation marks omitted).

To begin with, Plaintiffs qualify as additional insureds under the Subcontract. Although the Policy itself does not name Plaintiffs as "additional insured[s]," it provides coverage to other organizations "[a]s per the written contract." Policy, Dkt. 7-4, at 33. And the subcontract—the "written contract" at issue here—lists Plaintiffs as additional insureds. *See* Subcontract § 9.1(d).

Nevertheless, as the Policy also makes clear, "[t]his insurance does not apply to any liability arising out of … operations … where a Consolidated Insurance Program (CIP) in which [the insured] participate[s], commonly referred to as an Owner Controlled Insurance Program (OCIP), has been provide[d] by the contractor, project manager, or owner of the construction project." Dkt. 7-5, 18. Here, the Subcontract expressly provides that "General Liability Insurance" "for on-site activities" is "covered by owner-provided insurance under MTA's OCIP." *Id.* § 9.1. It therefore follows that Plaintiffs were not covered for Myck's injury which—it is undisputed—occurred on site.

In response, Plaintiffs point to section 9.1(c) of the Subcontract, which lists certain types of insurance that are "not covered under the OCIP," namely "off-site Worker's Compensation Insurance, off-site General Liability Insurance, off-site General Liability Insurance, Business Automobile Liability Insurance, other insurances may also apply – refer to the OCIP Manual in

---

* The parties do not dispute that New York law governs the claims at issue in this case, and the Court therefore applies New York law to this diversity action.

the Contract Terms and Conditions." See Pls.' Opp. Decl. at 5-6; see Subcontract § 9.1(c). Plaintiffs do not address how this language is relevant to the instant case, however. As just described, the Subcontract makes clear that on-site general liability is to be covered by MTA's OCIP, thereby excluding coverage under the Policy, *see* Policy §§ 9.1, 9.1(a). Nor do Plaintiffs even attempt to explain how, or why, any of the exempted insurances referenced in Section 9.1(c) of the Subcontract might apply with respect to Myck's on-site injury.

For these reasons, Defendant's motion to dismiss Plaintiffs' claim for breach of contract is granted.

## II. Declaratory Relief

In their second and third causes of action, Plaintiffs seek a declaratory judgment that they "are owed a duty of defense and indemnity by [D]efendant under the subject policy." *See* Complaint ¶¶ 31, 35.

Federal courts possess "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see* 28 U.S.C. § 2201(a). Ultimately, when determining whether a declaratory judgment is appropriate, courts "should consider whether 'the judgment will serve a useful purpose in clarifying and settling the legal relations in issue' and if 'it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Suk Joon Ryu v. Hope Bancorp, Inc.*, 18 Civ. 1236 (JSR), 2018 WL 1989591, at *6 (S.D.N.Y. Apr. 26, 2018) (quoting *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986)).

Where a declaratory judgment is duplicative of a breach of contract claim, it serves "no useful purpose." *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 302 (S.D.N.Y. 2012). *See also Miramax Film Corp. v. Abraham*, No. 01 Civ. 5202 (GBD), 2003 WL 22832384, at *15

(S.D.N.Y. Nov. 25, 2003) ("The lawfulness of defendants' actions will be determined by resolution of the contract claim. Hence, the declaratory relief will serve no useful purpose[.]"). Here, there is no doubt, nor do the parties dispute, that any obligation of Defendants to defend and indemnify Plaintiffs in the underlying state action would arise under the Policy. *See* Compl. ¶¶ 31, 35 (stating that "Plaintiffs are owed a duty of defense and indemnity by Defendant under the subject policy with respect to those claims [brought against them in the underlying action]"). Thus, "[b]ecause this Court has already analyzed the parties' rights under the Policy in connection with [Plaintiffs'] breach of contract claim, a declaratory judgment on the same issue would be superfluous." *Core–Mark Int'l Corp. v. Commonwealth Ins. Co.*, No. 05 Civ. 0183 (WHP), 2006 WL 2501884, at *9 (S.D.N.Y. Aug. 30, 2006).

Defendants' motion to dismiss Plaintiffs' claims for a declaratory judgment are therefore also granted, and Plaintiffs' request for attorneys' fees is accordingly denied. *See, e.g., Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996) ("[T]he party must be a prevailing party in order to recover [attorneys' fees].").

### III. Leave to Amend

In its declaration in opposition, Plaintiffs seek leave to amend their complaint "if the court finds that any of the causes of action set forth [] could be rectified by simply amending [that] cause of action." Pls.' Opp. Decl. ¶ 6. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." That said, whether to grant or deny leave to amend is committed to the "sound discretion of the district court," and may be denied when amendment would be futile because the amended pleading would not survive another motion to dismiss.

The Court is skeptical that Plaintiffs will be able to amend their complaint so as to state a

plausible claim for relief. Nevertheless, it will allow Plaintiffs to file a motion for leave to amend their complaint, in which they must identify how their proposed amendments would cure the deficiencies identified in this opinion.

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted. If Plaintiffs choose to file a motion for leave to amend their complaint, they shall do so no later than November 15, 2019. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 6.

SO ORDERED.

Dated: October 16, 2019
       New York, New York

_____
Ronnie Abrams
United States District Judge